UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-                                                                          1:03-CR-193
                                                                                   (LEK)

CHARLES HILDENBRANDT,

                 Defendant.

_____

# MEMORANDUM-DECISION AND ORDER[1]

**I.    Background**

On August 15, 2003, Defendant Charles Hildenbrandt ("Hildenbrandt") was charged with (1) knowingly, willfully, and maliciously damaging and attempting to damage and destroy, by means of fire and explosive, the building at 660 Fourth Street in Troy, New York, which resulted in personal injury to a public safety officer in the performance of his duties, in violation of 18 U.S.C. § 844(i) ("§ 844(i)"); and (2) knowingly using and carrying a firearm in the form of a destructive device, during and in relation to a crime of violence which can be prosecuted in a court of the United States, that crime being the violation of § 844(i), in violation of 18 U.S.C. § 924(c)(1)(A) ("§ 924(c)(1)(A)") and (c)(1)(B)(ii) ("§ 924(c)(1)(B)(ii)").  Superceding Indictment (Dkt. No. 13). After a seven day jury trial, on June 4, 2004, the jury found Hildenbrandt guilty on both counts. Jury Verdict Form (Dkt. No. 58).

A violation of § 844(i) carries a mandatory minimum sentence of seven years and a maximum sentence of forty years.  18 U.S.C. § 844(i).  Pursuant to § 924(c)(1)(B)(ii), when the firearm used in the violation of § 924(c)(1)(A) is a destructive device, the mandatory minimum

---

[1] For printed publication in the Federal Reporter.

1

sentence is thirty years. 18 U.S.C. § 924(c)(1)(B)(ii). Because no term of imprisonment imposed pursuant to 18 U.S.C. § 924(c) can run concurrently with any other term of imprisonment, the total mandatory minimum sentence that is statutorily required to be imposed upon Hildenbrandt is thirty-seven years. 18 U.S.C. § 924(c)(1)(D)(ii).

Hildenbrandt was scheduled to be sentenced on June 9, 2005, but as both Hildenbrandt and the United States had recently submitted memoranda regarding the mandatory minimums required in this case, the Court entertained oral arguments on that issue and adjourned the sentencing until June 28, 2005. June 9, 2005 Minute Entry (Dkt. No. 75). Hildenbrandt contends that the enactment of such a harsh mandatory minimum sentence by Congress violates the separation of powers doctrine and that a thirty-seven year sentence in this case violates the Eighth Amendment's prohibition of cruel and unusual punishment.[2] Def. Memo. (Dkt. No. 72). Having carefully considered all of the arguments before it, the Court is obligated to deny Hildenbrandt's objections to the mandatory minimums and to impose the statutorily required sentence of thirty-seven years.

---

[2] Hildenbrandt correctly notes that while these convictions may appear to be in violation of the Commerce Clause and Double Jeopardy provisions, those claims are precluded by relevant case law. Def. Memo. (Dkt. No. 72) at 2; see Russell v. United States, 471 U.S. 858, 861 (1985); United States v. Salameh, 261 F.3d 271, 278 (2d Cir. 2001).
  In a Supplemental Memorandum filed with the Court less than one week ago, Hildenbrandt claims that § 924(c)(1)(B)(ii) is unconstitutionally overbroad, citing United States v. Holder, 624 F. Supp. 68 (N.D. Ill. 1985). However, the statute in Holder was stricken as substantially overbroad because of its potential application to constitutionally protected *speech*. Holder, 624 F. Supp. at 69, 71. Although Hildenbrandt quotes language to represent to the Court that the overbreadth doctrine is applicable to the challenge of statutes that may be applied in violation of any constitutional provision, the overbreadth doctrine is in fact limited to First Amendment challenges. The Supreme Court and the Second Circuit make that clear. See, e.g., United States v. Salerno, 481 U.S. 739, 745 (1987) ("[The Supreme Court has] not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment.") (citing Schall v. Martin, 467 U.S. 253, 268 (1984)); United States v. Rybicki, 354 F.3d 124, 130-31 (2d Cir. 2003); Holder, 624 F. Supp. at 69.

II.   Discussion

A.   **Separation of Powers**

Hildenbrandt claims that the constraints upon judicial discretion established by Congress in enacting severe mandatory minimums such as the one in this case violates the separation of powers doctrine.  Def. Memo. (Dkt. No. 72) at 15-16.  He asserts that these minimums in effect give prosecutors the unbridled power in determining sentences because they decide what crimes to charge.  Id.  While the Court is troubled that Congress statutorily requires it to impose unjust sentences in certain cases, that is Congress' power, and the Court will enforce it.

Judges traditionally had unfettered discretion regarding sentencing, see, e.g., Mistretta v. United States, 488 U.S. 361, 390 (1989), but Congress has recently constrained that discretion through the enactment of the federal Sentencing Guidelines and various statutory minimum sentences.  The result has been that the determination regarding the amount of time a person will be deprived of his liberty, the ultimate power our government possesses, is no longer the exclusive province of a neutral party.  Instead, the prosecutor, in determining with which crimes to charge a defendant, effectively determines the minimum sentence.

The Supreme Court, however, has held that "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." Chapman v. United States, 500 U.S. 453, 467 (1991) (citing Ex parte United States, 242 U.S. 27, 37 (1916)).  This power includes the authority to create mandatory minimum sentences for crimes without running afoul of the separation of powers doctrine.  See, e.g., United States v. Hammer, 3 F.3d 266, 269 (8th Cir. 1993) (citing Chapman, 500 U.S. at 467); see also United States v. Daniels, No. 98-4732, 1999 WL 496594, at *3 (4th Cir. 1999) (unpublished); United States v. Chaidez, 916 F.2d 563, 565 (9th Cir.

1990). This is true even for lengthy mandatory minimum sentences. See United States v. Phillips, No. 04-4109, 2005 WL 705425, at *2 (4th Cir. 2005) (upholding mandatory life sentence for conviction for conspiracy to possess with intent to distribute at least 1.5 kilograms of methamphetamine against a separation of powers challenge) (unpublished).

### B. Cruel and Unusual Punishment

The Eighth Amendment's prohibition against cruel and unusual punishment bars the imposition of sentences that are disproportionate to the crime committed. Solem v. Helm, 463 U.S. 277, 285 (1983). Nonetheless, "[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare." Id. at 289-90 (citing Rummel v. Estelle, 445 U.S. 263, 272 (1980)) (emphasis in original). Federal courts should be "reluctan[t] to review legislatively mandated terms of imprisonment." Hutto v. Davis, 454 U.S. 370, 374 (1982) (quoting Rummel, 445 U.S. at 274). The "Eighth Amendment condemns only punishment that shocks the collective conscience of society." United States v. Gonzalez, 922 F.2d 1044, 1053 (2d Cir. 1991).

The Supreme Court has held that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem, 463 U.S. at 292. However, the Supreme Court later clarified that consideration of the latter two guidelines are not necessary in every case. Harmelin v. Michigan, 501 U.S. 957, 1004 (1991); see United States v. Bennett, 252 U.S. 559, 567 (2d Cir. 2001). Such consideration is only necessary "in the rare case in which a threshold comparison of the crime committed and the sentence imposed

leads to an inference of gross disproportionality." Id. at 1005.

Hildenbrandt committed a heinous crime. He created an explosive device, a "Molotov cocktail," and, without warning, threw it into the window of an apartment occupied at that moment in time by his ex-girlfriend, her current boyfriend, and an infant grandchild. Extensive property damage and the death of a pet resulted, and two firefighters sustained minor injuries. Fortunately, his attempt to murder the occupants of the apartment was thwarted and they escaped physically unharmed. It is not difficult to imagine a different result when an explosive is thrown into a residence that is occupied. The severity of the crime is clear.

The penalty that Congress has chosen to impose is a mandatory thirty years for using an explosive device to commit a federal crime of violence. This is certainly a harsh penalty, and for Hildenbrandt, it is effectively a life sentence. It cannot be said, however, that this sentence is so grossly disproportionate to the crime as to require a lengthy comparative analysis because "[t]he severity of [defendant's] crime brings his sentence within the constitutional boundaries established by [the Supreme Court's and Second Circuit's] prior decisions." See Harmelin, 501 U.S. at 1004.

The constitutionality of this sentence for a violation of § 924(c)(1)(B)(ii) has been confirmed time and time again. The Second Circuit in United States v. Santos, 64 F.3d 41 (2d Cir. 1995) (vacated on other grounds), upheld a thirty year sentence for a violation of § 924(c)(1)(B)(ii) in circumstances arguably more deserving of leniency than those in the instant case. Defendants in Santos operated a cocaine distribution center at which a confidential informant was going to make a purchase. Id. at 43. When the purported buyer entered the apartment, one of the defendants was holding a firearm and a single kilogram of cocaine was on a table. Id. at 44. Pursuant to a search warrant, Drug Enforcement Agency ("DEA") agents searched the apartment afterwards and found

several firearms, cash, drugs, and drug paraphernalia. Id. When looking in a broiler drawer in an oven in the kitchen, the DEA agents found a loaded .22 caliber firearm with a silencer wrapped in brown paper. Id. Because defendants were convicted of using a firearm equipped with a silencer during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), they were sentenced to the mandatory thirty years under § 924(c)(1)(B)(ii). Id. at 43.

The Second Circuit determined that the sentence was not grossly disproportionate to the crime because a silencer transforms a firearm into a more threatening weapon that can kill without warning or detection. Id. at 46. The same analysis is appropriate in this case. The use of an explosive device adds another layer to the already dangerous crime of arson. The explosion of the device itself is a source of danger, and increases the likelihood that harm will come to not only intended victims, but unintended ones as well. As can be seen in the Second Circuit's analysis in Santos, the fact that no person was actually physically harmed is of no consequence to this analysis.

Further, the facts in Santos make that case more compelling than Hildenbrandt's. In Santos, the gun was wrapped and hidden away in a broiler drawer in another room and was only found by agents during a search after defendants were arrested. Hildenbrandt, on the other hand, actually threw the explosive device into a residence occupied by three people and it exploded. The difference between these two situations is clear, and if it was not an Eighth Amendment violation to impose a thirty year sentence in Santos, it certainly is not a violation to do so in this case.

Courts in other circuits have also upheld the thirty year mandatory sentence pursuant to § 924(c)(1)(B)(ii) against Eighth Amendment attacks. See, e.g., United States v. Hammond, No. 96-4231, 1997 WL 54288, at *1 (4th Cir. 1997); United States v. Gonzales, 121 F.3d 928, 944 (5th Cir. 1997); United States v. Elder, Nos. 91-5605, 91-5606, 1992 WL 42346, at *2 (6th Cir. 1992);

United States v. Martinez, 967 F.2d 1343, 1348 (9th Cir. 1992); United States v. Sturmoski, 971 F.2d 452, 462 (10th Cir. 1992).

Moreover, courts have upheld higher sentences for crimes that are arguably less serious than those in the case at hand against Eighth Amendment challenges. Harmelin, 501 U.S. at 996 (life imprisonment without parole for possession of 672 grams of cocaine); Hutto, 454 U.S. at 372-73 (forty year sentence for possession with intent to distribute nine ounces of marijuana); Rummel, 445 U.S. at 285 (life sentence under state recidivist statute in which the three predicate offenses were fraudulent use of a credit card to obtain $80 worth of goods, passing a forged check for $28.36, and obtaining $120.75 by false pretenses); United States v. Valdez, 16 F.3d 1324, 1334 (2d Cir. 1994) (life imprisonment without parole for "merely middle-level drug dealers"); United States v. Rosenberg, 806 F.2d 1169, 1176 (3d Cir. 1989) (fifty-eight year sentence for possession of unregistered firearms, explosives, and false documents); Anthony v. United States, 331 F.2d 687, 688 (9th Cir. 1964) (forty year sentence for two marijuana sales by first-time offender).

Finally, the mandatory nature of the sentence does not constitute cruel and unusual punishment. "[E]ven mandatory sentences of life imprisonment without the possibility of parole do not violate the Eighth Amendment simply because they are mandatory." United States v. Jackson, 59 F.3d 1421, 1424 (2d Cir. 1995) (citing Harmelin, 501 U.S. 994-96).

As a federal district court, this Court is required to follow precedent established by higher courts. It is also bound to follow the law as prescribed by Congress within the bounds of the Constitution. Therefore, because the thirty-seven year mandatory minimum sentence pursuant to § 924(c)(1)(B)(ii) is not in violation of the Eighth Amendment of the Constitution, it must be applied to Hildenbrandt.

7

The Court has serious reservations about its obligation to impose such a harsh sentence in this case. It is certainly true that Hildenbrandt's criminal act was despicable, inexcusable, and deserves the fullest measure of punishment that justice requires. He attempted to kill his ex-girlfriend, her current boyfriend, and an infant by throwing an incendiary device into the residence they occupied. It is only by sheer good fortune that all escaped alive and that the only physical injuries were minor. Hildenbrandt deserves to be imprisoned for a long time, for that is what justice requires.

But justice also demands consistency, rationality, and proportionality. Congress has made no provision in this statute regarding whether the explosive device is created by an amateur or professional, is hand-made or machine-made, is employed by a terrorist group or (as in this case) a jilted lover, or, incredibly, whether the device even works or not. If the device did not function and caused no damage whatsoever, the defendant still would receive a mandatory minimum thirty year sentence. As another court so aptly noted, "[a]s Aristotle once put it, in *Politics*, there is no greater injustice than to treat unequal things equally." United States v. Quigley, 798 F. Supp. 451, 457 (W.D. Mich. 1992).

There is something terribly wrong with a system in which a defendant could throw an incendiary device that never ignites and be imprisoned for a minimum of thirty years, while a defendant who crosses state lines and actually rapes and sexually abuses a very young child may be free in less than thirteen years. See U.S. SENTENCING GUIDELINES MANUAL § 2A3.1(a) and (b)(2)(A) (2004)[3]. A defendant that commits arson resulting in the death of a person in New York

---

[3] Base Offense Level thirty increased by four levels for victim being under age twelve with Criminal History Category I leads to a Guideline range of 151-188 months.

8

State has a minimum of fifteen to twenty-five years, N.Y. PENAL LAW § 125.25(3), 70.00(3)(a)(i) (2004), and in federal court, a defendant convicted of second degree murder can be released in under twenty years.  See U.S. SENTENCING GUIDELINES MANUAL § 2A1.2(a)[4].  Congress has constructed a legal system in which a child rapist or a murderer is permitted to go free long before a defendant who caused absolutely no damage at all.  One of the philosophical underpinnings for the enactment of the Sentencing Guidelines was to create a system in which the increment of the harm corresponds to the increment of punishment.  United States v. Martinez-Rios, 143 F.2d 662, 669-70 (2d Cir. 1998).  Causing only property damage by using a crude, homemade "Molotov cocktail" does not warrant thirty-seven years of imprisonment.  The increment of harm in this case bears no rational relationship to the increment of punishment which this Court must impose.

### III. Conclusion

Based on the foregoing discussion, it is hereby

ORDERED, that Hildenbrandt's objections to the mandatory minimum sentences in this case are **DENIED**; and it is further

ORDERED, that the mandatory minimum sentences will be imposed in accordance with applicable law; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.

DATED: July 06, 2005
       Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[4] Base Offense Level thirty-eight with Criminal History Category I leads to Guideline range of 235-293 months.